OPINION OF THE COURT
Phillip R. Rumsey, J.
This CPLR article 78 proceeding was commenced to compel the respondent, Nelson E. Roth, Esq., to produce certain records and documents pursuant to Public Officers Law § 84 et seq., commonly called the Freedom of Information Law (FOIL).
The petitioner, Robert Muniz (the defendant in the case People v Muniz, Tompkins County, indictment No. 91-116), requested the respondent to produce defined records and documents related to the fabrication of fingerprint evidence in his case. The request was made through Muniz’ attorney by letter dated June 8, 1994. The respondent did not reply to the request within five business days as required under Public Officers Law § 89 (3) or at any time thereafter prior to the motion.
Nelson E. Roth, Esq. is presently serving as a New York *295 Special Prosecutor pursuant to Executive Orders Nos. 165 through 165.8 (9 NYCRR 4.165), and as a Deputy Attorney-General of the State of New York pursuant to the appointment of the Attorney-General of the State of New York in connection with the Governor’s Executive Orders. His responsibilities relate specifically to the investigation of allegations that employees or former employees of the Division of the New York State Police fabricated or manipulated fingerprint or other forensic evidence or testified falsely in relation to such evidence.
Mr. Roth obtained a conviction[1] against New York State Police Officer Robert Lishansky for fabricating fingerprint evidence in the cases People v Longtin, People v Hallock, People v Lucas and People v Muniz.[2]
The petitioner’s FOIL request was for the following specific records and documents:
"1. Accusatory instruments;
"2. Arrest/investigatory reports;
"3. Statements of complainants and witnesses, including but not limited to Mr. David Harding;
"4. Statements of Mr. Robert Lishansky. Reference is made to Exhibit B, Page 1, which states that members of the State Police Inspection team met with prosecutors within the Troop C area, and that 'based on a review of the physical evidence and on statements made by Lishansky to the Special Prosecutor and the police, the State Police inspection team has concluded’;
"5. Reports, memoranda, statements, correspondence, or documents regarding the above referenced statements by Mr. Robert Lishansky;
"6. Reports, memoranda, statements, correspondence, or documents regarding the conclusions reached by the State Police Inspection team as to the falsity of the Latent Print Examination form General 33, attached hereto as Exhibit 'C\
"7. Reports, memoranda, statements, correspondence or documents regarding the conclusions reached by the State Police Inspection team as to the falsity of the fingerprints of Lee Longtin and Daryl Hallock set forth in Exhibit 'C\
"8. Communications log entries of any kind regarding the *296 falsification of fingerprint evidence by Mr. Robert Lishansky.” (Petitioner’s exhibit A, schedule A.)
The petitioner’s attorney both at motion term and by letter dated August 5, 1994 clarified the FOIL request by confirming, "what we intend to request is simply all the information within the categories set forth in schedule A of the demand as related only to the fingerprints of Lee Longtin and Daryl Hallock * * * our intention is to make no demand for information other than that which relates to the two fingerprints” (respondent’s exhibit B).
Mr. Roth refuses the request to produce the documents for the following reasons.
As to item 1, he has no accusatory instruments in his files relating to Longtin, Hallock or Muniz; the accusatory instrument he does have relates to Robert Lishansky and is a public record on file in the Tompkins County Clerk’s Office.
Information sought under items 2, 3, 5, 6 and 7 would interfere with law enforcement investigations or judicial proceedings because the investigation with regard to Lishansky and others is continuing. The disclosure of the requested records would identify confidential information, and may reveal criminal investigative techniques. Mr. Roth contends that the records set forth the manner in which fabricated fingerprints are located and identified. He believes that disclosure of this highly specialized technique may well aid others to cover up such acts in the future.
On item 4, besides the reason of an ongoing investigation, Mr. Roth argues that certain statements made by Lishansky were made during confidential hearings conducted pursuant to section 6 of the Executive Law and section 73 of the Civil Rights Law, and would therefore be exempt pursuant to Public Officers Law § 87 (2) (a). That section protects from disclosure records that "are specifically exempted from disclosure by state or federal statute”. (Public Officers Law § 87 [2] [a].)
Lastly, on the records requested in item 8, Mr. Roth contends no such documents exist and he has no such documents in his files.
DISCUSSION
The legislative intent in enacting FOIL was to make available to the public documents generated by and in the possession of government unless a compelling reason requires their *297 confidentiality. (Public Officers Law § 84; Matter of Gannett News Serv. v State of N. Y. Off. of Alcoholism & Drug Abuse, 99 Misc 2d 235.)
In determining whether the documents sought come within one of the statutory exemptions, "the FOIL exemptions are to be narrowly construed, and the burden to establish the applicability of an exemption is on the agency seeking to prevent disclosure” (Matter of Spencer v New York State Police, 187 AD2d 919, 920 [3d Dept 1992]).
The objection to item 1 (the availability of the record in the Tompkins County Clerk’s Office) is baseless. FOIL does not require a showing of need for the requested record. (See, Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 80.) The fact that a document subject to FOIL is available elsewhere does not free the agency from its duty under FOIL to disclose the document.
Mr. Roth’s principal argument to the remaining disclosure is that the records relate to a continuing criminal investigation, and the records would reveal nonroutine criminal investigative techniques. He has not met his burden to claim the exemption.
Fingerprint tests have been held to be an example of routine investigative techniques. (Matter of Moore v Santucci, 151 AD2d 677, 679.) The methods of discovering fabricated fingerprints have not been shown to be unique, or to deserve an exemption not afforded fingerprint tests.
The science of detecting phony fingerprint evidence may have been raised to a new level in Mr. Roth’s special investigation, but the process of locating and identifying fabricated fingerprints appears to be a routine methodology. This methodology was the subject of testimony in open court by New York State Police Senior Investigator Vincent Rosetti (petitioner’s exhibit A), and the same information was further conveyed to the Tompkins County District Attorney (petitioner’s exhibit B).
In determining if the investigative techniques are "non-routine”, the question is whether the disclosure of the records would give rise to the likelihood that violators could evade detection by deliberately tailoring their conduct in anticipation of avenues of inquiry to be pursued by agency personnel. (Matter of Fink v Lefkowitz, 47 NY2d 567, 572; Matter of Moore v Santucci, 151 AD2d, at 679, supra.) The respondent has not established, and the court is unconvinced it is likely *298 that wayward law enforcement members or others, armed with the knowledge of how phony fingerprints may be detected and proved, could change their modus operand! and thereby avoid detection, or that the information sought is on a technique that is any more than a standard procedure.
Mr. Roth’s investigation is continuing. There can be no doubt that this investigation is of unprecedented importance and sensitivity involving as it does the abuse by police officers of the trust and power invested in them by the People of the State of New York (see, Executive Order No. 165.3 [9 NYCRR 4.165]). The court is mindful of the potential for hampering the investigation by the disclosure of confidential sources. However, merely asserting the exemption without any particularity is not sufficient under the case law. (See, Cornell Univ. v City of N. Y. Police Dept. 153 AD2d 515.)
Exemption for some of the statements made by Robert Lishansky is also claimed on the basis that the statements were made in a private hearing pursuant to Executive Order and are therefore protected by section 73 of the Civil Rights Law. Section 73 (8) in pertinent part provides: "Except in the course of a subsequent hearing which is open to the public, no testimony or other evidence adduced at a private hearing or preliminary conference or interview conducted before a single-member agency in the course of its investigation shall be disseminated or made available to the public by said agency, its counsel or employees without the approval of the head of the agency.”
In addressing the applicability of section 73, Justice Yesawich Jr. pointed out "That section [73 (8)] of the statute plainly sets forth the procedure by which an investigative agency may disseminate certain testimony or other evidence to the public; it does not prohibit the court from ordering disclosure of such material under appropriate circumstances, i.e., where the aforementioned protections [attorney-client privilege, attorney work product privilege] do not attach.” (Mahoney v Staffa, 184 AD2d 886, 888.)
FOIL excepts from mandated release those documents that are specifically immune by other statutes. Section 73 outlines the way an investigative agency may disseminate evidence to the public if it deems it appropriate. Conversely, the statutory language implies that an investigative agency may choose not to release evidence to the public, and in that event, the evidence is cloaked with confidentiality. The statu *299 tory grant of confidentiality under the Civil Rights Law rightfully calls into play the exemption under FOIL.
The statements sought that were made during confidential hearings conducted pursuant to section 6 of the Executive Law and section 73 of the Civil Rights Law are exempt.
CONCLUSION
The petitioner is entitled to the documents requested in schedule A numbers 1, 2, 3, 6 and 7; the material requested in items 4 and 5 is denied as exempt under Public Officers Law § 87 (2) (a) only as far as they involve matter gathered in confidential hearings as noted above; the item requested in 8, not existing, is denied.

. Tompkins County indictment No. 92-130; SCI Nos. 036S, 037S.

. Lee Longtin, Daryl Hallock, Richard Lucas and Robert Muniz were all originally indicted under indictment No. 91-116.